IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ATHLETICS INVESTMENT GROUP, LLC,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>THE BAY AREA AIR QUALITY MANAGEMENT DISTRICT, et al.,<br><br>　　　　Respondents<br>―――――――――――――――――<br>SCHNITZER STEEL INDUSTRIES, INC.,<br><br>　　　　Real Party in Interest. | Case No. 22-cv-03268-MMC<br><br>**ORDER GRANTING PETITIONER'S MOTION TO REMAND** |

Before the Court is petitioner Athletics Investment Group LLC ("Athletics") Motion to Remand, filed August 3, 2022. Respondents Bay Area Air Quality Management District and Alexander Crockett (collectively, "BAAQMD") have filed opposition, to which Real Party in Interest Schnitzer Steel Industries, Inc. ("Schnitzer") has filed a joinder and the Athletics have filed a reply. Having read and considered the papers filed in support and in opposition to the motion, the Court rules as follows.[1]

**BACKGROUND**

In their Petition, filed in state court on May 6, 2022, the Athletics allege that Schnitzer "operates a metal-shredding operation" in Oakland, California, and that

―――――――――

[1] By order filed September 14, 2022, the Court took the matter under submission.

Schnitzer is "an emitter of air contaminants that operates within BAAQMD's jurisdiction." (See Pet. ¶ 3.) The Athletics further allege that, in 2007, BAAQMD issued Schnitzer a Permit to Operate ("PTO") a "mega-shredder" (see Pet. ¶¶ 42, 48), and that BAAQMD subsequently renewed the PTO (see Pet. ¶¶ 53-55, 59), most recently in "late 2021" (see Pet. ¶ 66). The Athletics bring, as their First Cause of Action, a claim seeking a writ of mandate directing BAAQMD to "revoke Schnitzer's PTO" and "deny [Schnitzer] a new permit" (see Pet. ¶ 79), and bring, as their Second Cause of Action, a claim seeking a declaration that BAAQMD is required to revoke the PTO and deny Schnitzer a new permit (see Pet. ¶ 81; see also Prayer for Relief ¶ 2).

      In particular, the Athletics allege they are entitled to the relief they seek for the following five asserted reasons: (1) Schnitzer is "not in compliance" with the terms of the most recent PTO issued by BAAQMC, in that Schnitzer's "emissions" have been in excess of those allowed under the PTO (see Pet. ¶ 73.a); (2) Schnitzer's "shredder and associated sources" emit pollutants that "trigger[ ]" application of BAAQMC's "BACT [Best Available Control Technology] and TBACT [Toxic BACT]" requirements, and said sources do not comply with BAAQMD's BACT and TBACT requirements (see Pet. ¶ 73.b; see also Pet. ¶¶ 20, 22); (3) Schnitzer's "shredder and associated sources" cause a "cancer risk at nearby sensitive receptors that exceeds 10 cancer cases per million," a circumstance that requires BAAQMD, under one of its rules, to "not permit [Schnitzer's] [f]acility to operate" (see Pet. ¶ 73.c); (4) Schnitzer's shredder "has a potential to emit over 100 tons/yr of POCs [precursor organic compounds]" and, consequently, cannot operate in the absence of a "Major Facility" permit, which Schnitzer does not have (see Pet. ¶ 73.d; see also Pet. at 2:26-27); and (5) in addition to its shredder, Schnitzer operates, without a PTO, two "sources" that "emit" certain pollutants, and that a PTO is required to operate those other two "sources" (see Pet. ¶ 73.e).

      On June 3, 2022, BAAQMD removed the Petition to district court.

//

//

**DISCUSSION**

In its Notice of Removal, BAAQMD states the Petition includes a claim that arises under federal law and, consequently, that the instant removal is proper under 28 U.S.C. § 1331.  (See Notice of Removal ¶ 3.)  The Athletics now seek remand on the ground that BAAQMD cannot meet its burden of establishing that the Petition includes a claim arising under federal law.  See Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (holding "defendant always has the burden of establishing that removal is proper").  The Court, as set forth below, finds the Athletics' argument persuasive.

Section § 1331 "vests in federal district courts 'original jurisdiction' over 'all civil actions arising under the Constitution, laws, or treaties of the United States.'"  See Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 689 (2006) (quoting 28 U.S.C. § 1331).  "A case arises under federal law within the meaning of § 1331 . . . if a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."  Id. at 689-90 (internal quotation, alteration, and citation omitted).  As discussed below, neither of those circumstances exists here.

First, the mandatory duties the Athletics allege BAAQMD has not performed, thus warranting issuance of a writ of mandate and declaratory relief, are contained in a state statute, specifically, California Health & Safety Code § 42301.  (See Pet. ¶¶ 18-19, 71). In particular, § 42301 provides that, where a district board establishes a "permit system," the board shall "[p]rohibit the issuance of a permit" unless it is satisfied the applicant's "article, machine, equipment, or contrivance" complies with "[a]ll applicable orders, rules, and regulations of the district and of the state board," see Cal. Health & Safety Code § 42301(b)(1), and that, "upon annual renewal," the board shall review each permit to "determine that the permit conditions are adequate to ensure compliance with, and the enforceability of, district rules and regulations," see Cal. Health & Safety Code § 42301(e).  Additionally, the Petition identifies BAAQMD rules that, the Athletics allege, BAAQMD has not, although mandated to do so by § 42301, enforced.  (See Pet. ¶¶ 72,

3

73.) Consequently, the Petition, on its face, asserts a claim created by state law.

BAAQMD argues the law on which the Athletics rely is, nonetheless, at least in part federal, and thus that federal law creates the causes of action here alleged. In particular, BAAQMD observes, some of the BAAQMD rules cited in the Petition incorporate standards set by federal law, see, e.g., BAAQMD Rule 2-1-304 (providing BAAQMD "shall deny" PTO if applicant "would not or does not comply with . . . federal or California laws or regulations"); in addition, BAAQMD observes, the Petition contains an allegation that BAAQMD has issued permits to Schnitzer even though Schnitzer has not only failed to comply with state law, but also with standards set by the federal Clean Air Act (see, e.g., Pet.¶ 41). By such argument, however, BAAQMD has done no more than point out that the state law on which the Athletics rely has incorporated by reference standards set by federal law, which references "do not make [the state law causes of action] into federal causes of action." See Rains v. Criterion Systems, Inc., 80 F.3d 339, 344 (9th Cir. 1996) (remanding action; finding, where state law wrongful termination claim was based on defendant's alleged failure to comply with Title VII, defendant's "argument[,] that [plaintiff] filed a federal claim, cannot succeed").

Second, although there exists a "special and small category of cases" in which federal question jurisdiction exists over a claim that "finds its origins in state rather than federal law," see Gunn v. Minton, 568 U.S. 251, 258 (2013) (internal quotation and citation omitted), namely, where the state law claim "turn[s] on substantial questions of federal law," see Grable & Sons Metal Products, Inc., 545 U.S. 308, 312 (2005), the instant case does not fall within that special category. In particular, a substantial question of federal law exists where the claim "requires an interpretation of a federal statute," the plaintiff "challenges a federal statute's constitutionality," or the federal "legal issue" presented, "if decided, will be controlling in numerous other cases," see City of Oakland v. BP PLC, 969 F.3d 895, 906 (9th Cir. 2020), but does not exist where the claim, rather than presenting an issue of law, is "fact-bound and situation-specific," see Empire Healthchoice, 547 U.S. at 700-701. Here, as noted, the Athletics allege Schnitzer, in light

of five circumstances specific to the manner in which Schnitzer is conducting its operations, should not be allowed to operate its facility (see Pet. ¶ 73.a-e), which allegations are not sufficient to present a substantial federal question. See City of Oakland, 969 F.3d at 907 (holding "federal jurisdiction [is] lacking when [a] case require[s] a fact-specific application of rules that come from both federal and state law rather than a context-free inquiry into the meaning of a federal law") (internal quotation and citation omitted).

BAAQMD nonetheless asserts that a substantial federal issue is presented. In that regard, BAAQMD argues, were the Court to rule that any emission by Schnitzer that temporarily exceeds emission standards set by the Environmental Protection Agency ("EPA") under Title V of the federal Clean Air Act would require Schnitzer to obtain a Title V permit, and were the Court to further rule that BAAQMD cannot address such temporary condition by entering into a settlement agreement with Schnitzer, the EPA's workload would "dramatically increase." (See Resp't's Opp. at 28:15-17.)[2] The claimed effects of any such hypothetical decision on the EPA's workload, however, is, as the Athletics argue, wholly speculative. Moreover, the Athletics do not allege that BAAQMD's duty to act arises from Schnitzer's having temporarily exceeded emission limits, but, rather, from Schnitzer's having exceeded emissions limits on multiple occasions over a period of several years. (See Pet. ¶¶ 38, 65 (alleging Schnitzer exceeded emissions limits over three-year period).)

In sum, BAAQMD has not shown the Athletics' claims arise under federal law.

//
//
//

---

[2] Under Title V, a "permitting authority," such as BAAQMD, must submit to the EPA "a copy of each permit proposed to be issued and issued as a final permit," see 42 U.S.C. § 7661d(a)(1), which proposed or final permit the EPA reviews to determine if the permit is in compliance with federal requirements, see 42 U.S.C. § 7661d(b).

**CONCLUSION**

For the reasons stated above, the Athletics' motion to remand is hereby GRANTED, and the above-titled action is hereby REMANDED to the Superior Court of California, in and for the County of Alameda.

**IT IS SO ORDERED.**

Dated: October 7, 2022

MAXINE M. CHESNEY
United States District Judge